UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALLEGHENY VALVE AND COUPLING, INC., *AS SUCCESSOR BY MERGER OF ALLEGHENY COUPLING COMPANY* AND ALLEGHENY VALVE COMPANY, *PRESENTLY D/B/A ALLEGHENY VALVE COMPANY AND ALLEGHENY COUPLING COMPANY,*

Plaintiffs,

v.

**DECISION AND ORDER**
06-CV-426S

H&H METAL SPECIALTY, INC.,

Defendant.

## I. INTRODUCTION

Plaintiff in this action is Pennsylvania company Allegheny Valve and Coupling Inc. ("Allegheny").[1] It develops and sells couplings and other products used to transfer liquids, including petroleum. Defendant H&H Metal Specialty, Inc. ("H&H") is a tool and die shop in New York that has manufactured Allegheny's products for more than 50 years. In 2004, Allegheny sought to end its relationship with H&H, which led to litigation. The parties settled their differences and entered into a formal settlement agreement ("the Agreement").[2] Subsequently, each party has alleged that the other has broken the Agreement.

On December 14, 2006, H&H filed a Motion for Partial Summary Judgment in this Court on its first counterclaim, which seeks $244,000 plus interest for Allegheny's failure to pay for inventory. Allegheny filed a Cross-Motion seeking Partial Summary Judgment

[1] Plaintiff commenced this litigation as "Allegheny Coupling Company" and "Allegheny Valve Company." They have since merged to form Allegheny Valve and Coupling Inc.

[2] A copy of the Agreement is attached to the Complaint.

for H&H's alleged breaches of the Agreement. This Court, in its Decision and Order dated September 23, 2007, denied each motion for partial summary judgment and dismissed Allegheny's first two causes of action. (Docket No. 73.)

Presently, each party has new motions before this Court. H&H seeks summary judgment on Allegheny's remaining causes of action and on its counterclaims. (Docket No. 79.)[3] In addition to opposing H&H's motion, Allegheny filed two cross-motions: the first seeks Reconsideration, under Fed. R. Civ. P. 60(b), of this Court's dismissal of its first two causes of action (Docket No. 89), while the second requests Leave to File the Declaration of Dean Fralick. (Docket No. 116.) For the following reasons, H&H's motion is granted in part and denied in part, and Allegheny's motions are denied.

## II. DISCUSSION AND ANALYSIS[4]

### A. Allegheny's Cross-Motion for Reconsideration

In its previous decision, this Court concluded that Allegheny had not established that H&H breached the Agreement by failing to turn over dies. It determined that the Agreement unambiguously required H&H to relinquish only those dies that were listed on Exhibit B and that H&H fully complied with that requirement. Allegheny now seeks reconsideration of that decision under Fed. R. Civ. P 60(b). Specifically, it argues that "just cause" and new evidence warrant this reconsideration. Rule 60(b) provides relief from a judgment for, inter

---

[3]Allegheny asserted two additional breach of contract claims (and a request for attorney fees) in its Amended Complaint, which was filed after the first set of motions were argued and submitted. Those causes of action were not at issue in this Court's September 23, 2007 decision. They are now.

[4]A full explication of the facts can be found in this Court's September 23, 2007 decision.

alia, mistakes, inadvertence, excusable neglect, newly discovered evidence, fraud or any other reason justifying relief. It provides "extraordinary judicial relief" that may "only be granted upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). Accordingly, granting Rule 60(b) relief is "disfavored." Empresa Cubana Del Tabaco v. General Cigar Co. Inc., 385 Fed. Appx. 29, 31 (2d Cir. 2010).

Allegheny presumably rests its first argument on the language in Rule (60)(b)(6) providing that a court may reconsider a judgment for "any other reason justifying relief." Seizing this language, Allegheny re-asserts its contention that H&H was to return all of the Allegheny dies, not just those listed in Exhibit B. However, a Rule 60(b) motion cannot serve as an attempt to "re-litigate the merits." Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir.1989). Nor can a 60(b) motion stand in for an ordinary appeal. Nemaizer, 793 F.2d at 61. Here, Allegheny's argument amounts to an appeal of this Court's decision dismissing its first two causes of action. It asks this Court to once again interpret the terms of the Agreement, but points to no "exceptional circumstances" that would warrant such a drastic measure. See id. A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already briefed, examined, and decided simply because Allegheny is dissatisfied with the decision.

Allegheny also requests reconsideration based on eighty-five new dies it discovered on H&H's premises.[5] This is an argument under Rule 60(b)(2), which permits relief from

[5] According to Allegheny, these dies were discovered during a September 5, 2007 search of H&H's premises, which was permitted under ¶ 5 of the Agreement. H&H disputes the legality of the search. In any event, Allegheny produced a list of dies discovered during the search that it claims are listed on Exhibit B but were not turned over by H&H. (Sitler Declaration, Exhibit 1, Docket No. 92-2.) However, this list does not match Exhibit B, and for every die listed on Exhibit B, H&H has produced documentation, signed by Allegheny, that confirms delivery and receipt.

a judgment based on new material evidence. But as this Court already noted, H&H submitted signed documentation from Allegheny confirming it received the dies listed on Exhibit B, precluding any issue of material fact. Therefore, this "new evidence" does not alter this Court's previous finding: H&H sent Allegheny, and Allegheny received, all the dies required by the Agreement.

In further support of its motion for reconsideration, Allegheny requests leave to file the declaration of Dean Fralick, which it also regards as new evidence. In his declaration, Fralick states that he was employed by H&H in February and early March of 2006, and that soon thereafter he was laid off. This time period is particularly significant. Pursuant to the Agreement, H&H and Allegheny mutually released each other from any alleged contractual violations occurring before February 16, 2006. Therefore, only their actions from this date forward can implicate the motions currently before this Court. Fralick declares that a few days before February 16, 2006 (the date Allegheny came to retrieve their dies from H&H), he saw Brian Ceci, a manager at H&H, supervise the removal of a truckload of Allegheny dies. He states that he overheard H&H employees say that they were taking the dies to Brain Ceci's personal garage, presumably in an effort to hide them from Allegheny. According to Fralick, these dies were eventually returned to H&H's facility where they were used to make parts for Betts Industries, Inc.[6] and other customers. According to Allegheny, this conclusively demonstrates that H&H violated the Agreement by preventing Allegheny from acquiring its dies.

---

[6] Allegheny's second cause of action, dismissed in this Court's September 23, 2007 Decision, alleged that H&H violated the non-compete clause in the Agreement by selling Allegheny parts to Betts Industries, Inc.

Because this motion is made in support of Allegheny's motion for reconsideration, it is evaluated in light of the support it gives to that cause. Under this analysis, Allegheny's motion is denied for three reasons.

First, H&H has provided documentation from the New York State Department of Labor that Fralick's start date for unemployment insurance was February 12, 2006. This directly contradicts his statement that he was employed by H&H on February 16, 2006 and that he was able to witness these events in the course of his employment.[7] This is not, as Allegheny would have it, a mere matter of credibility. This uncontroverted document from the Department of Labor demonstrates that Fralick was not employed by H&H in the relevant time period, despite his assertions otherwise.

Second, Fralick makes no claim that any of the dies allegedly removed from H&H were dies that were listed on Exhibit B. Under this Court's earlier decision and the plain language of the Agreement, it is only these dies, specifically spelled out in Exhibit B, that H&H contracted to return to Allegheny. Since Fralick does not contend that any of those dies were hidden and improperly retained by H&H, he offers no "new evidence" that would warrant reconsideration under Rule 60(b).

Finally, Allegheny makes no showing that this new evidence could not have been discovered earlier. The movant who seeks to obtain relief from judgment under Rule 60(b)(2) must meet an "onerous standard" by showing that, inter alia, he was justifiably ignorant of those facts despite due diligence. U.S. v. Int'l Bhd. of Teamsters, 247 F.3d 370,

---

[7] This also precludes any support Fralick could lend to Allegheny's contention that H&H violated the non-compete agreement.

392 (2d Cir. 2001). Allegheny neither makes such a demonstration, nor attempts such a demonstration. Accordingly, its motion for reconsideration and its motion for leave to file Fralick's declaration are denied.

**B. H&H's Motion for Summary Judgment on Allegheny's Claims**

**1. Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted); see also Fed R. Civ. P. 56(c).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted). The function of

the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**2. Third Cause of Action – Die Tampering**

Allegheny's third cause of action alleges that H&H violated the agreement by "modifying, tampering, and altering" Allegheny's dies and equipment.[8] In support of this claim, Allegheny submits the declaration of Gary Gustafson, who inspected the dies H&H returned to Allegheny and determined that they had been intentionally tampered with and damaged. (Gustafson Declaration, ¶¶ 13,14; Docket No. 91.) H&H denies these allegations and responds with declarations of its own from H&H employees who state they did not tamper with any dies. (Ceci Declaration, Traniello Declaration, Harris Declaration, Coleson Declaration, Farrugello Declaration, King Declaration; Docket Nos. 97–102.) They also argue that the dies are simply old, and that any damage is the result of normal wear.

H&H's arguments are unavailing at the summary judgment stage. Determining whether Gustafson is correct (the dies were tampered with) or H&H is correct (the dies are simply old) is a prototypical question of material fact for the jury. Therefore, summary judgment is improper. See Fed. R. Civ. P. 56.

**3. Fourth Cause of Action – Usable Inventory**

Only one thing is certain about Allegheny's fourth cause of action: it alleges that H&H breached paragraph four of the Agreement.[9] Aside from this, Allegheny's claims are

[8] ¶ 2 of the Agreement explicitly prohibits this.

[9] ¶ 4 provides:

> Plaintiff affirms that it has approximately 200,000 to 300,000 worth of usable inventory. Usable inventory is defined as non-defective products or non-defective component parts of products found in Defendants' current

difficult to discern. In its amended complaint, Allegheny first alleges that H&H misrepresented the content and the amount of the inventory. (¶ 27.) Later in the amended complaint, under the heading "Fourth Cause of Action," Allegheny alleges that H&H breached the contract by "failing to box inventory" correctly. (¶ 43.) Then, in its memorandum of law, it abandons these claims, and argues that the inventory it accepted, for which it was billed almost $300,000, was actually worth only $131,442. 91. (Plaintiff's Memorandum of Law, p. 13; Docket No. 94.) It appears from its latest motion papers that Allegheny now claims that over half the inventory it received was "unusable." (Id. ¶¶ 13-14) But H&H points out that Allegheny already accepted this inventory and issued credit memos (totaling $2,269.53) for inventory that it determined was unusable or miscounted. (Traniello Declaration, ¶ 8; Docket No. 83.) Allegheny does not dispute this claim, but apparently now wishes to add to this sum. However, Allegheny makes no assertion regarding unusable inventory in its amended complaint. This violates Fed. R. Civ. P. 8(a)(2), which requires that the plaintiff show in its complaint that it is entitled to relief. Allegheny cannot raise this issue now.[10] Further, of the breaches that it does allege in the

---

> catalogs that can be used by Defendants to fill current and future customer orders (hereafter "Usable Inventory,") Plaintiff agrees that it will not increase such inventory after February 2, 2006. Plaintiff further agrees that, to the extent possible, Plaintiff will use the Usable Inventory to fill Defendants' existing orders. Plaintiff further affirms that it will not sell or transfer any of the Defendants' products found in its inventory to Betts Industries, Inc., except as specified below. Defendants agree to remove all remaining Usable Inventory during or before the week of February 27, 2006, and pay for the remaining Usable Inventory pursuant to the schedule set for below. (Schedule omitted.)

[10] Although Fed. R. Civ. P. 54(c) may permit this Court, in its discretion, to read the memorandum of law as an amendment to the complaint, the confusion generated by Allegheny could prejudice H&H, who must respond to this imprecise, scatter-shot approach to pleading. See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1219 (3d ed. 2004) (observing that prejudice is a factor when applying Rule 54(c)). However, this evidence is relevant to Allegheny's opposition to H&H's counterclaims. Therefore, Allegheny can present its evidence by way of opposition and defense, thereby

amended complaint (improper labeling, counting, and boxing), it offers no evidence in support of those claims from which a jury could find in its favor. In the absence of such evidence, H&H is entitled to summary judgment.

**4. Fifth Cause of Action – Non-Compete Agreement**

In its fifth cause of action, Allegheny alleges that H&H breached the non-compete agreement. An analogous claim can be found under its second cause of action in its original complaint. That claim was dismissed in this Court's September 23, 2007 decision.

Its second cause of action in the original complaint (which mirrors the second cause of action in the amended complaint) alleges that H&H breached the Agreement by "continuing to sell Allegheny products to Allegheny's competitor." Its fifth cause action in the amended complaint alleges that H&H breached the Agreement by "violating the non-compete agreement." Although these claims are duplicative, Allegheny tries to distinguish them in an effort to re-argue its claim that H&H improperly sold products to Betts. Under the heading "Defendant's Violations of the Non-Compete Agreement in the Settlement Agreement," in the amended complaint, Allegheny asserts that "Defendant sold or attempted to sell a piece of equipment with an Allegheny product attached." (¶ 30.) This refers to a dispute about a picture of an Allegheny product on H&H's website. (See Gustafson Declaration, ¶ 31.) Allegheny uses this alleged violation to mask its real claim: that H&H breached the non-compete agreement by selling product to Betts.[11] But, as noted

avoiding any prejudice caused by its failure to plead sufficient facts, while maintaining an avenue to be heard.

[11] This is the only claim Allegheny argues in its memorandums of law.

above, this Court already decided the merits of Allegheny's claim that H&H improperly sold products to Betts and it has not met the "onerous standard" for reconsideration. See Int'l Bhd. of Teamsters, 247 F.3d at 392.

Further, even if this Court were to analyze this claim anew, it would not withstand summary judgment. Allegheny relies exclusively on the declaration of Gary Gustafson, an Allegheny employee who makes nothing but conclusory statements that H&H violated the non-compete agreement by selling to Betts. This does not raise a genuine issue.

Finally, Allegheny presents no evidence that the product on the H&H website was sold to a competitor in violation of the non-compete agreement. Therefore, H&H's motion for summary judgment on this claim is granted.

**C. H&H Motion for Summary Judgment on Its Counterclaims**

H&H's contends that it has fulfilled its contractual obligations, and therefore its counterclaims primarily seek payment under the Agreement. But to succeed on a breach of contract claim against Allegheny, H&H must prove that it is in compliance with its own obligations under the Agreement. See Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000). Because Allegheny retains a claim that H&H breached the contract, this Court cannot presently decide H&H's motion. Further, Allegheny has produced sufficient evidence to withstand summary judgment. Allegheny has provided evidence that it does not owe the full payment under the Agreement because it received dies that were tampered with and damaged. (Gustafson Declaration, ¶ 13; Exhibit B; Docket No. 91-9.) It also defeats summary judgment because it has provided evidence that H&H sold it inventory that was not "usable," as required by the Agreement. (Lawson Declaration, ¶¶

12-13.) Because factual disputes permeate these actions, summary judgment is improper.[12]

## III. CONCLUSION

For the reasons stated above, H&H's Motion for Summary Judgment is granted with respect to Allegheny's fourth and fifth causes of action. It is denied with respect to Allegheny's third cause of action and H&H's counterclaims. Allegheny's Cross-Motion for Reconsideration, and its Motion for Leave to File the Declaration of Dean Fralick are denied. Allegheny's third and sixth causes of action, and H&H's counterclaims, remain.[13]

## IV. ORDERS

IT HEREBY IS ORDERED, that H&H's Second Motion for Summary Judgment (Docket No. 79) is GRANTED in part and DENIED in part.

FURTHER, that the fourth and fifth causes of action in the Amended Complaint (Docket No. 62) are DISMISSED.

FURTHER, that Allegheny's Cross-Motion for Reconsideration (Docket No. 89) is DENIED.

FURTHER, that Allegheny's Cross-Motion for Leave to File the Declaration of Dean

[12] Each party also seeks attorneys fees pursuant to the Agreement. But this issue hinges on the resolution of the other claims, and cannot be decided at this time.

[13] Each party's remaining claims are essentially concerned with two issues: the value of the inventory that H&H sold to Allegheny and whether H&H tampered with Allegheny's dies.

Fralick (Docket No. 116) is DENIED.

SO ORDERED.

Dated: August 9, 2011
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court